We have two matters on today's docket. The first is cause number 21-10383, United States of America v. John David Martinez. Is the appellant ready to proceed? You may. May it please the court. My name is Brandon Beck, and I represent John David Martinez, the appellant in this case. Your Honors, this case is about a criminal defendant who was denied a fair trial when the government presented three extrinsic acts witnesses at trial, two under Rule 413, one under Rule 404B. And there are four reasons why this court should reverse and remand for a new trial. First, no witness should have testified under Rule 413 because Mr. Martinez was not accused in the instant offense of attempted sexual assault. Second, the 404B witness's testimony was not strictly relevant to motive, opportunity, plan, knowledge, or intent. Third, all three witnesses should have been excluded under the Rule 403 balancing test. And fourth, the district court's decision to allow this testimony was not harmless. To my first point, Your Honors, two witnesses testified under Rule 413. For Rule 413 to apply, the defendant must be accused of sexual assault or attempted sexual assault, both in the instant offense and in the prior bad acts. Here, we're only challenging the instant offense, not under a categorical approach, but looking to the conduct that undergirds the accusation. Specifically what I mean by that are the acts that constitute the offense as they actually happened. Here, the accusation was enticement of a minor. The conduct that undergirded that accusation we see in the indictment on pages 13-15 of the record. We see talk of arranging an encounter for illicit sex, but we don't see anything finalized and we don't see any travel occurring. So what we have here at most is a substantial step toward persuasion, not a substantial step toward sexual assault. In two cases, United States v. Broussard in 2012, United States v. Howard in 2014, and between an attempt to persuade and an attempt to sexual assault. Each time at the government's urging. Each time the government won that argument, and now the government is trying to have it the other way. So here, the question that we must ask is, did Mr. Martinez attempt to sexually assault in this case? Because that's a requirement under 413. Here, all we see is mere preparation, even if the government is able to prevail to show a substantial step toward persuasion. In fact, in United States v. Howard in 2014, the defendant made the argument, I didn't travel, therefore I didn't commit the crime of enticement. In fact, what the defendant argued in that case is, the government hasn't proved that I committed an attempt to sexually assault. The government's response, we don't have to establish an attempt to sexual assault in an enticement case. We only have to show an attempt to persuade. In this court in Howard, considered it a very close question whether it was even a substantial step toward persuasion, which falls far short of sexual assault. I did want to comment briefly on the government's use of United States v. Hitt in this case. Hitt dealt with the crime of transporting a minor across state lines for the purposes of sex, a man act offense. What we saw in Hitt that distinguishes it from this case is we saw 75 to 90 acts of contact conduct. When we look at those acts underlying the offense, in Hitt it's clearly a 413 offense. Here it's clearly not. I thought your argument though is that we don't look at the actual acts in the offense and just look at sort of a categorical approach. I agree with the government. This is not a categorical approach analysis. We do look at the acts. We look at the conduct that undergirds the accusation. The accusation is enticement. The conduct here is defined in the indictment. Text messages, July 29th and July 30th of 2018. When we look at those text messages, we see a lot of unlawful talk. We see a lot of things that are immoral, but what we don't see is an attempt to sexually assault. Well, he crawls into bed with her on one occasion, right? Well, two responses to that, your honor. First of all, that's outside of the accusation. That happened a month earlier. That is not conduct that happened on July 29th and July 30th. In other words, what 413 says is in the criminal case, the defendant is accused. The jury could have believed that all of that happened a month earlier in the month of June, but if the jury didn't believe that Mr. Martinez sent these text messages, they could not have convicted Mr. Martinez. Second point in response, and this is a difficult argument for me to make, is that what happened in June was not attempted sexual assault either. The strongest accusation, there's some vagary in that testimony, and it's on pages 374 to 376 in the record. What happened there is one instance where someone touched her leg and then left the room, and another instance where he got into bed, she got up and left. In United States v. Bluebird, it's the only case I know where a court has looked at the text sexual assault. In Bluebird, the Eighth Circuit considered four prior instances, at least two of which occurred in a bedroom. One standing in the doorway of the bedroom, the Eighth Circuit said mere preparation to sexual assault. One holding a hand on the couch rubbing a stomach, mere preparation for sexual assault. One came into the bedroom, attempted to get under the covers, mere preparation. The only one that was an attempt of sexual assault is when the defendant entered the bed, took off his pants, passed out drunk on top of her. So hopefully that's all I say about Bluebird, but that's the only case that looks at that distinction. Counsel, let's assume you're right that it's not admissible under 413, but we do think it's all admissible under 404. I know you disagree with that, but just assume that. Then isn't the only error that in the instruction on what the jury could consider it for, which is a list of things, knowledge, intent. The judge did also say propensity for the two witnesses that he also let in under 413. That would be the error, and that error in this case would be devastating, because it's the propensity inference that overwhelms the passions of the jury. The reason 413 is so dangerous— But you agree that would be the focus of the harmlessness then, because the testimony would have been allowed under 404, it would just be that one word. We'd have to focus on the harm of that one word in the instruction. Correct, and that's the word that makes all the difference in this case, Your Honors. And I did want to say something about Rule 404. There was a third witness that came in under Rule 404B. The standard here under this court's decision in United States v. Templeton is strict relevance. The district court allowed this testimony for the entire laundry list under 404B. I did want to say the district court allowed it for motive because, quote, it evidences his sexual interest in children. That's the record, pages 1,125. Here's the problem. That witness was not a child at the time that this conduct occurred. She was 17 years old, which is an adult under federal law and under the Texas Penal Code, so it can't be to show motive of his sexual interest in children. As to knowledge, opportunity, and plan, the district court said it's allowed there because it shows he, quote, has a method to selecting and grooming potential victims before later using them. The problem with that is that this court said in United States v. Cockrell in 2009, quote, the relevance of extrinsic act evidence is a function to the similarity of the charged offense. Well, that one in particular is quite dissimilar to the charged offense. There we have specific acts of coercion that we don't see here. We have the withholding of a cell phone. We have the promise to allow a tattoo, and here we have the communication by text messages, which we don't see there. The final way that the district court said that it comes in is through intent. The district court said, quote, by pleading not guilty, Martinez put his intent at issue. Historically, if we trace the line of cases, we take all the cases I've cited and the government cited on this question and trace it back, it tends to go back to United States v. Roberts in 1980. United States v. Roberts says intent is at issue when a defendant pleads not guilty in a conspiracy case because of the unique nature of conspiracy crimes. Over time, as that's been cited, the conspiracy part of it at times has fallen out, at times has not. So what we see is we see discrepancy within Fifth Circuit jurisprudence. For example, United States v. Roberts. Why does this matter? Because didn't he place intent at issue by saying, I thought his whole defense was he thought he was texting the victim's mother. His defense is that he was. I mean, it was later changed. If I understand your point, Your Honor, that was first made at closing long after the district court had allowed it in for intent. So time only works one way here. What was his defense earlier then? He hadn't raised a defense earlier than closing. He established evidence along the way and then pieced it together in closing, but this was long after the district court allowed this testimony in for intent and allowed the 413 witnesses on day one. Was that his only rebuttal evidence? Well, he had a series of pieces of rebuttal evidence that he then tied into a coherent theory of the defense. So the different pieces of evidence that he used to kind of connect the dots were that there were text messages that were deleted that the government couldn't account for. So the forensic evidence showed the deletions the government couldn't account for. There was a day where it's believed that the minor victim didn't have her cell phone when there were these text messages exchanged. Third, there was an infatuation relationship between the defendant and the mother of the minor victim. And fourth, there was a motive for her to make up this story through deletions because she had gotten her child taken away and was trying to get custody back. So I'm not raising sufficiency of the evidence here. I'm not trying to persuade you of that theory, but the point is the defendant, and this goes to harmlessness, the defendant did raise a theory of the defense. It was not a lay down trial. So when we look at that in conjunction with the fact that the first day of evidence was dominated by these extrinsic acts witnesses, and the very last thing that the government left the jury with in their rebuttal argument was, we know he did it this time, and I'm paraphrasing, because he did it before, please consider all of the evidence in this case. In fact, if I were to read the transcript of the case, just the government's case in chief, and I didn't see the indictment, I would think this case is about those prior victims. And it's our position that after hearing the testimony of those three victims, two of which included the propensity inference, we could have shown that Mr. Martinez was out of the country at the time that these text messages were sent, and he didn't even have his phone, and the jury still would have convicted. And our burden on harmlessness is simply to show a reasonable probability that the improperly admitted evidence contributed to the conviction. We think that even if this court is not persuaded by the defense's theory, in conjunction with how the government used it, the nature of these allegations, which were substantial, and the fact that it was not a laid-down trial, shows that this error was not harmless. Well, the defense . . . I thought it was maybe that the mother was on her own texting him, acting like the victim because of some attempt to get the father in trouble, because the victim would have been staying with the father when these texts occurred. I mean, that's not even a defense, right, because if the defendant thought he was texting a minor, it's just like the undercover cases that, you know, happen all the time. Correct. And what's different about this, the theory of the defense is not mistake. It was that he was texting an adult, the adult then deleted messages to change the context of the messages. So the victim's testimony was a complete fabrication. I'm not speaking to that, Your Honor, and I just want to emphasize here, there's a reason we didn't challenge the sufficiency of the evidence in this case, but that doesn't foreclose our argument on harmlessness. On sufficiency, we'd have to show that no reasonable juror could convict. I think a reasonable juror could convict in this case. I think we all agree with that. But what we can show is that the jury was overwhelmed by this evidence in such a way that it wouldn't have mattered what the defense theory was. They would have convicted based on the 25 percent of the government's case in chief that they heard that dominated day one. And it's for these reasons that we ask this court to reverse and remand for a new trial. Thank you, Counselor. Thank you, Your Honor. May it please the court. Joe Magliolo for the United States. The district court correctly applied Rule 413 in this case because that rule is conduct focused, not limited to the simple charge against the defendant. The district court also correctly found under Rule 404B that all three extrinsic evidence witnesses could testify because their testimony went to Mr. Martinez's culpable mental state, the absence of mistake or accident, and his identity. And finally, any error is harmless beyond a reasonable doubt because the evidence against Mr. Martinez was ultimately overwhelming. I'll start with 413. The plain text of Rule 413 indicates that it is conduct focused. It says that when a defendant is merely accused in a criminal trial, not charged with a crime, but accused in a criminal trial, then 413 can be triggered. And it defines 413, or 413 rather defines sexual assault further in a way that supports this broad view of the rule. It says that sexual assault for purposes of 413 can be a federal or state law offense that includes certain types of prohibited conduct which is effectively non-consensual sexual contact between a defendant and a victim or an attempt to do so. And I think that undermines the notion that the 413 application is strictly limited to what is charged, given that the drafters of this rule indicated that it can be triggered by state law conduct alone, which we obviously cannot charge in the federal court. Now, as to the Hitt decision, I believe it supports this broad reading of Rule 413 because I'd like to point out two things. First, there were two Man Act violations charged in that case, but there was also a violation of 2422A, which is the same statute Mr. Martinez was charged with in this case. And not either one of those Man Act violations, it was a substantive and conspiracy count, or 2422A required the government at any point to prove attempted or completed sexual contact. All we have to do is prove that that defendant either conspired to commit a Man Act violation, traveled across state lines with the intent to engage in illicit sexual contact, or use an interstate commerce facility to coerce or entice a minor to do so. And so, the argument, I'm not saying that Hitt is factually identical to this case. It's not. But the arguments are almost identical, because what the defendant and Hitt argued was that 413 shouldn't apply because the government doesn't have to prove a sexual assault to prove its case against them. And this court disagreed. It took a broader view of 413 because it said that that evidence was relevant to the defendant's intent and it was relevant to his modus operandi. And I appreciate that the defense has said that it does not believe that a categorical approach should apply, but I think that is effectively what they're doing. It's looking to what is the minimum quantum of evidence necessary to charge or convict the defendant of whatever the offense charged, and permitting the court to look no further. But that wasn't the case in Hitt. There was evidence, obviously, of hands-on sexual assault in Hitt, but that was intrinsic to the offense, just the same way the attempted sexual assault here was intrinsic to the offense charged. I mean, that's exactly what the district court found. That's why it found it was admissible. It did not find it to be other acts evidence under 404B. It explicitly said this is intrinsic to the offense charged, which is why it was appropriate for the district court to apply Rule 413 in this case. And I also take issue with the notion that Mr. Martinez did not attempt to sexually assault the minor victim, Jay. There's three primary categories of evidence that demonstrate that attempt. First is, as Judge Costa mentioned, Jay talked about this on pages 374 to 376 of the record. Mr. Martinez gets into bed with her as Jay is spending the night at Mr. Martinez's home. He gets behind her. He touches her leg on multiple occasions. She has to shoo him away on multiple occasions. And then he later solidified that it was him by sending a text message to Jay confirming that, yes, I did try to do this. On a separate occasion, he tells Jay to get into his bed. He starts touching her back in a way that scares her and causes her to run away. Now, I accept Bluebird is not a good case for our position. I think it's wrong. But aside from being wrong, it's certainly not precedential. And there's distinguishing factors between Bluebird and what's here. And that's because of the other two categories of evidence that demonstrate this attempted sexual assault. The second category is, in addition to the horrifying litany of sexual text messages that Mr. Martinez sent to this minor victim Jay on July 29 and 30, and obviously before that, as she testified to, are these logistical text messages where he's trying to get Jay that evening to sneak out of her house for purposes of sex. She demurs. He then tries to get her to let him come over to have sex with her. She demurs. And then he switches gears. And again, this is a 31-year-old adult and 11-year-old child. But she continues to demur. And then he switches gears to, well, every time you come over to my house and spend the night, you're going to have sex. He cajoles her into this multiple times over and over again throughout Government's Exhibit 1. And that's really important in terms of timing. Because almost contemporaneously with this, Mr. Martinez is text messaging with his sister, who is Jay's stepmother and has primary custody over her. When Jay gets back to her stepmother, back to her father, and they have Jay and are able to control where she goes, he's trying to get her to spend the night. This is on pages 182 and 183 of Government Exhibit 8. So he is trying to set up this sexual liaison with this minor victim, Jay, and text messaging her about it two nights later to assure, get her, rather, to assure him that they're going to have sex every single time that she spends the night. Now, turning to the 404B. What about Broussard, and where do you draw the line between this preparation and a substantial step? Well, Your Honor, I think taking all the evidence together in this case, we have something that demonstrates the firmness of his intent. This goes beyond mere preparation. I mean, I think the physical contact on its own, Your Honor, constitutes a sexual assault, given that it's intrinsically often charged. So we have physical contact here, where in Broussard, there was nothing of the sort. But then we have . . . He says it's not in the time period in the indictment. I agree, but the district court found it to be intrinsic, and that's not something he's challenged at any point on appeal. So I think that is a settled matter before the court. So I think what we have is, in addition to the physical contact, we have Mr. Martinez using his relationship, leveraging his relationship with the girl's stepmother, and committing her to have the girl spend the night, as she did so frequently. And then, on top of it, telling Jay, this 11-year-old girl, or getting her to assure him over and over again that we're going to have sex. This is something that demonstrates the firmness of the defendant's intent, which is necessary to establish an intent under federal criminal law. Turning to the 404B issue, the defendant absolutely put his intent at issue by pleading not guilty. The government is absolutely obligated to prove that the defendant knew the girl was under the age of 18. And while that is the defense they raise at closing, as a government, we have to anticipate defenses. I don't think we have to wait for the defense to open the door to some particular defense before we get to start bringing in evidence. We're meant to bring all evidence we can bring to bear that's appropriate under the rules, and that's precisely what we did here. Now, given the facts of this case, there's not a lot of different ways this was going to go. It was either going to be Mr. Martinez didn't have the phone, which he didn't seem to challenge, or he didn't believe that he was texting an adult. I think that's what we anticipated, and that's precisely what the evidence showed. And I know that the instructions as to Madeline and B, the 2413 witnesses, are not exactly consonant with 404B's, obviously, given that the district court said the propensity evidence was appropriate to consider that propensity. And 404B, obviously, is more limited. But the district court, after those two witnesses, after the 404B witness, even after Jay testified during closing arguments, assured the jury, instructed the jury time and time again that you all are meant to only convict the defendant for what he's charged for. So I think given those repeated instructions, which I think this court ought to presume the jury followed, the district court appropriately instructed that jury. And I also take issue with the notion that we spent too much time on this. I calculated at about 24% of the record. It's not a long trial, but we were mostly focused. We spent three times more time of the trial on convicting Mr. Martinez for the offenses for which he was charged, and not the three Extrinsic Act evidence witnesses. I'd like to talk now about harmlessness, because I think even if this court were to take all of that evidence out, or consider it in the course of the whole trial, the evidence against Mr. Martinez was ultimately overwhelming. We had a minor victim, Jay, who was not cross-examined and said, throughout the course of July 2018, Mr. Martinez, her step-uncle, texted her over and over and over again demanding sex. And she said no, and she said no. But she's 11, and he's 31, and he eventually wore her down, and she said yes. The court saw a subset of these messages on July 29th and 30th, but Jay testified that this was going on for weeks before that. The messages that the court didn't see were much more graphic. She was not cross-examined on this subject, so that testimony I think is effectively not controversial. And these theories that the defense raised simply have no basis in the evidence. There was no evidence of an infatuation between Mr. Martinez and Jay's mother. There was this handful of jokes. There was no evidence that Jay didn't have her phone the day that she was at that softball game. And I'm not even sure how it would go, that this theory would work, that it would give Jay's mother a better shot at custody, when she's the one who had custody when these text messages were being sent. And they weren't discovered by Jay's mother. They were discovered by a babysitter. There's just nothing to these defense theories. And there's a part of Government's Exhibit 1 on page 20 and 21, where Mr. Martinez quite literally says, after he says, can I stick my blank in your blank, he says, so this is really Jay, her full name, and you really want to have sex with me. That's a made enticement case. And we brought in other evidence, but that is the enticement case. That evidence is not contradicted in the record. And as a result, any error this court finds, and I don't think it ought to find any, any error is harmless beyond a reasonable doubt. One final point on 403, this court has routinely permitted the types of evidence, the Extrinsic Act evidence, that we brought in in other cases. In the Lewis decision, which this court permitted 413 evidence, this court permitted Extrinsic Act evidence of forcible rapes of minors in a man act trial. In Wolford, this court permitted child pornography possession in an attempted enticement sting case trial. And in Montsevasse, this court permitted another type of enticement conversation in an attempted enticement sting trial. So the types of evidence that the court permitted in under 403 is right in line with the things this court has permitted in other cases where the evidence demonstrates a defendant's longstanding sexual interest in children. If the court has no further questions, I'm happy to cede the balance of my time. Thank you, counsel. Thank you, Your Honor. Rebuttal? May it please the court, the government just spent a lot of time talking about the jury instructions. I believe that's the government's best argument in this case, specifically the instruction that the jury is supposed to only consider the charge defense. But here's why that doesn't get the government over the finish line. This court said in United States versus Juarez in 2017 that limiting instructions can allay, quote unquote, allay prejudice, but cannot eliminate prejudice, and we look sometimes to the type of case that we're talking about. In Gruden versus United States, the United States Supreme Court said, quote, it's not unreasonable to conclude that in many such cases the jury can and will follow the judge's instructions. Nevertheless, there are some contexts in which the risk that the jury will not or cannot follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored. Here's a question I will raise, if the government's case was so overwhelming, why call three prior bad acts witnesses on the first day of the trial? I don't know that the government can explain that contradiction. Certainly, there's tension in everyone's arguments today, mine included. I think that's the problem. If it was such a slam dunk case, why spend 25% of the trial having young women crying on the witness stand on the first day of trial? I think at that point, before any testimony from the minor victim, before hearing from anyone else, the jury had made a decision, and that decision is, we are going to convict him because he's a bad guy. That's the problem that the Supreme Court talked about in Gruden. That's the problem that I believe the Ninth Circuit talked about in Sumner. This court has talked about that problem in years prior for the prejudice inherent in a drug offense. Well, what is everyone worried about today on social media, on the news, human trafficking, pedophile rings, child molesters? That's what people are angry about. That's what the government leveraged in this case, and I believe the government went too far. I wanna say something about HIT and the government's use of that. HIT, depending on how you read it, it describes three counts under the Mann Act, but there is a footnote that says one of the counts was 2422A, which is not what we were charged with here, but it's close, and I'll give the government that. What we have in HIT is grotesque, frequent contact offenses. There's no question that sexual abuse occurred in HIT. It's far different than Howard and Broussard, which is similar to this case. Why is it, when you look at all the cases cited in both the briefs, it's the Mann Act cases that are the 413 cases. In the enticement cases, it never seems to come up. It doesn't come up in Broussard. It doesn't come up in Howard. Now, the government would say it comes up in United States versus Blazek, which is an enticement case. But you read the opinion, and what the court said is, no, 413 doesn't apply because of enticement. It applies because he was also charged with the Mann Act and committed sexual assault during that interstate travel. Your run-of-the-mill enticement case does not involve sexual assault or attempted sexual assault. That's borne out by the absence of that in the record. The Mann Act cases tend to, because during the course of that travel, there tends to be sexual assault while the perpetrator has the victim kind of under their control. So I'd like the court to think about that and why we see such a disparity here. What we see here at most is an attempt to persuade and at most mere preparation of attempted sexual assault. It is for these reasons, again, we ask this court to reverse and remand for a new trial. Thank you, counsel. The court will take this matter under review.